Argued December 22, 1978, affirmed January 29, 1979

WILLSON et ux, *Appellants,*
*v.*
HESSONG, *Defendant,*
FRANKLIN, *Respondent.*
(No. 23316, CA 11168)

589 P2d 1194

George VanNatta of VanNatta & Petersen, St. Helens, argued the cause and filed a brief for appellants.

John F. Hunnicutt, St. Helens, argued the cause and filed a brief for respondent.

Before Schwab, Chief Judge, Gillette and Roberts, Judges, and Holman, Judge Pro Tempore.

HOLMAN, J., Pro Tempore.

**HOLMAN, J.,** Pro Tempore.

Plaintiffs brought a suit to determine adverse claims to realty under the authority of ORS 105.615. Their claim to an entire interest in the property is based upon adverse possession against a cotenant. They appeal from an adverse decree.

M. M. Franklin died in 1914, seized of the real property in question. His estate was never probated. One of his five children, Valentine Franklin, continued to live upon the property and did so until his death in 1969. Plaintiff Curtis Dale Willson was Valentine's grandchild but was reared by Valentine and his wife as their son. At the time of trial he was 36 years of age and had lived upon the property all of his life except for a period of 15 months immediately following his marriage to plaintiff Susan Elina Willson in 1961. In 1966 Valentine and his wife quitclaimed their interest to plaintiffs. Respondent Russell Franklin is the descendant of one of Valentine's brothers. This suit was brought in May 1977.

Plaintiffs contend that the issue is whether ORS 105.615[1] was intended to have retrospective application. The statute is as follows:

> "An action may be brought under ORS 105.605 by a tenant in common of real property to establish adverse possession as against all other cotenants if the tenant in common has been in possession of the real property, exclusive of all other cotenants, for an uninterrupted period of 20 years or more and has paid all taxes assessed against such property while in possession."

There is no doubt it was intended to be retrospectively applicable because the legislative history shows it was enacted to take care of a specific circumstance which was brought to the legislature's attention and which could not have been solved without intending such an application. However, this is not the real issue in the case.

---

[1] Oregon Laws 1969, ch 350, § 1.

The real issue is whether the plaintiffs can tack their own exclusive possession and payment of taxes to the similar exclusive possession and payment of taxes by Mr. Willson's grandfather which took place prior to the deed to plaintiffs in 1966. While there are indications that others in the family may have at one time paid taxes, the evidence indicates that the grandfather's exclusive possession and taxpaying, if added to plaintiffs', is more than adequate to encompass the 20 years prior to the bringing of this suit.

This brings into question the construction of ORS 105.615 and whether it was intended that the cotenant who brings an action must have himself exclusively occupied the premises and paid the taxes for the required period. It is our conclusion that the statute was intended to do away with the notice which one cotenant has to give to another that he is occupying the premises adversely and thus avoid the shibboleth that the possession of one cotenant is the possession of all cotenants. The words "tenant in common [who] has been in possession" for 20 years refer to the "tenant" who is authorized to bring the action. The literal wording of the statute, therefore, would indicate that the cotenant bringing the action must himself qualify under the statutory requirements and tacking is not permitted.

The subject of tacking was discussed in the early stages of legislation, and the person promoting the statutory change, which he was advocating to take care of a particular situation in which he found one of his clients, was asked whether tacking would be permitted under the proposed legislation and his answer was that it would not. A committee member then expressed himself as being of the opinion that the proposed statutory change should permit tacking. The chairman of the committee expressed himself as believing that the statute as it was then proposed probably did not permit it. However, at that time the plan was to add a rebuttable presumption of adverse possession as subsection (40) of ORS 41.360 to cover

such circumstances. Thereafter, the plan was changed to a separate statute in its present form, but the legislative history does not disclose why this was done or what conclusion was reached concerning whether tacking was to be allowed.

■ The statute is in derogation of the common law and should be given a narrow rather than a broad construction in the absence of any guidance. In addition, the literal wording of the statute indicates that tacking was not intended to be permitted. For these reasons it is our conclusion that the statute was not intended to permit tacking and plaintiffs are not entitled to relief.

The decree of the trial court is affirmed.